**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**STEPHEN J. BALISE, M.D.,**

**Plaintiff,**

**v.** **Civil Action No. 1:24-cv-2**

**BRITTANY JACKSON,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 225] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 217]**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff Stephen J. Balise, M.D. [ECF No. 225] and Defendant Brittany Jackson [ECF No. 217]. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion [ECF No. 225] and **GRANTS** Defendant's Motion [ECF No. 217].

## I. RELEVANT UNDISPUTED FACTS[1]

Plaintiff Dr. Stephen Balise began a General Surgery residency program at West Virginia University in July 2018. ECF No. 217-1, Balise CV. Defendant Brittany Jackson worked at West

[1] The Court summarizes the undisputed facts it finds necessary and relevant to the dispositive questions of whether Ms. Jackson's alleged statements were privileged or made with actual malice. Because the Court's answers to these legal questions dispose of the entire case, the Court need not delve further into the vast production of medical records and extensively briefed arguments regarding whether Dr. Balise is an alcoholic. Furthermore, given the ongoing related litigation in the Circuit Court of Monongalia County, West Virginia regarding Dr. Balise's residency with WVUH, the Court declines to address factual contentions which are not necessary for disposition of this present case.

Virginia University Hospital ("WVUH") as a registered nurse in the Neurocritical Care Unit ("NCCU"). ECF No. 217-2 at p. 904, Ex. 5, Jackson Dep. 265:13-14; ECF No. 217-2 at p. 7, Ex. 2, Balise Dep. 7:9-12. While working together, Plaintiff and Defendant began a romantic relationship in the summer of 2021. Id. at p. 8, Ex. 2, Balise Dep. 8:9-13. The couple broke up on February 12, 2022. ECF No. 217-25 at pp. 664-65, Ex. 5, Jackson Dep. 25:18-26:8. Ms. Jackson cites Dr. Balise's alcohol consumption as a contributing factor to their relationship ending. Id. at pp. 664-65, Ex. 5, Jackson Dep. 25:18-26:8; Id. at pp. 1083, 1103-04, 1093-97, Jackson Dep. at Ex. 5, Texts, [DEFJACKSON00082, 102-103, and 92-96]. In contrast, Dr. Balise characterizes Ms. Jackson as a "jilted ex-girlfriend" and their relationship as toxic, with Ms. Jackson getting angry with Plaintiff for maintaining female friendships. ECF No. 226 at p. 3; See ECF No. 226-6 at p.8, Balise Dep. at 27:7-18; Ex. 5, Jackson Dep. Ex. 12, Ballou Letter [Balise 0090-91].

During their relationship and after, Ms. Jackson reached out to Dr. Balise's co-workers and friends regarding her concerns with his drinking. ECF No. 217-2 at p. 152, Ex. 2, Balise Dep. 152:19-24 (contacting Dr. Reiger and Dr. Aaron Hudnall); ECF No. 217-2 at p. 779, 926, Ex. 5, Jackson Dep. 140:9-13, 287:5-8; Id. at pp. 1163-64, Jackson Dep. Ex. 12, Ballou Letter [Balise 0090-91]; ECF No. 217-2 at pp. 158-160,

Ex. 2, Balise Dep. 158:17-160:7 (contacting co-resident Dr. Marguerite Ballou). In February 2022, Ms. Jackson contacted Dr. Ballou regarding Dr. Balise's alcohol use; Dr. Ballou visited Dr. Balise's apartment based upon Ms. Jackson's and her own concern for Plaintiff. ECF No. 217-2 at pp. 1163-64, Jackson Dep. Ex. 12, Ballou Letter [Balise 0090-91]. While there, Dr. Ballou removed an "assortment of alcohol" from Plaintiff's residence, and informed Ms. Jackson as such. Id. at pp. 779, 925, Ex. 5, Jackson Dep. 140:14-16, 286:17-23; Id. at pp. 1163-64, Ex. 5, Jackson Dep. Ex. 12, Ballou Letter [Balise 0090-91]; ECF No. 217-2 at pp. 158-160, Ex. 2, Balise Dep. 158:17-160:7.

Plaintiff and Defendant briefly reconciled their relationship in April 2022, but the reconciliation ended Mid-May 2022. ECF No. 217-2 at pp. 800-801, Ex. 5, Jackson Dep. 161:12-162:24; ECF No. 217-2 at pp. 124-25, Ex. 2, Balise Dep. 124:10-125:5; ECF No. 217-5 at pp. 668-69, 799-800, Ex. 5, Jackson Dep. 28:23-29:1;160:17-161:3. While Plaintiff and Defendant were still in communication, Dr. Balise was hospitalized for pancreatitis. ECF No. 217-2 at pp. 52, 126, Ex. 2, Balise Dep. 52:10-11, 126:12-16. While hospitalized, Dr. Balise received five 1 mg intravenous doses of Ativan. Id. at p. 348, Ex. 2, Balise Dep. Ex. 11, Medication Administration Record [WVUM00897-880]. Dr. Balise additionally refilled a prescription of Ativan

on June 22, 2022. Id. at pp. 334, 350, Ex. 2, Balise Dep. Ex. 6 [WVUM00017], Balise Dep. Ex. 12 [WVUMPharm00013].

On May 19, 2022, Ms. Jackson learned that Dr. Balise was also in a relationship with Surgical Intensive Care ("SICU") nurse Corinna Strietbeck. ECF No. 217-2 at pp. 667-68, 799-800, Ex. 5, Jackson Dep. 28:23-29:1; 160:17-161:3; ECF No. 217-2 at p. 32, Ex. 2, Balise Dep. 32:11-12. Believing there was overlap in the sexual relationships, Defendant contacted Ms. Strietbeck and asked her if she believed Ms. Jackson should get tested for a sexually transmitted disease ("STI"). Id. at pp. 128-29, Ex. 2, Balise Dep. 128:8-129:13; ECF No. 217-2 at p. 1162, Ex. 5, Jackson Dep. Ex. 11, Text Message (May 19, 2022) [Balise 0071]. Plaintiff and Defendant ceased social interaction or communication after permanently breaking up in May 2022. Id. at pp. 727-28, Ex. 5, Jackson Dep. 88:21-89:11.

Following their break-up, Dr. Balise aimed to avoid Ms. Jackson at work. ECF No. 217-2 at pp. 27-29, Ex. 2, Balise Dep. 27:3-29:15. Dr. Balise obtained permission from his residency program director Dr. David Borgstrom to keep a professional distance from the Defendant and avoid caring for patients in the NCCU while Ms. Jackson was working. Id. at pp. 27-28, Ex. 2, Balise Dep. at 27:16-28:3; 27:7-18. Further, Plaintiff would ask the night shift charge nurse what assignment Ms. Jackson had to "minimize unnecessary encounters, set boundaries, and otherwise

avoid seeing her." See ECF No. 226-8, p. 17-18. Defendant learned of Plaintiff's efforts to avoid her at work on August 12, 2022, from Nightshift Supervisor Leanna Rose. ECF No. 217-2 at pp. 720-25, Ex. 5, Jackson Dep. 81:18-86:4; Id. at p. 1061, Jackson Dep. Ex. 5, [DEF-JACKSON00060]. During a phone call, Supervisor Rose told Defendant that night shift charge nurses had complained to her because Dr. Balise was approaching them regarding Ms. Jackson's patient assignments. Id. at pp. 723-25, Ex. 5, Jackson Dep. 84:16-86:15. Following the phone call, Ms. Jackson texted her friends regarding what she believed to be Dr. Balise's interference with her career. Id. at pp. 728-729, Ex. 5, Jackson Dep. 89:16-90:6; See Id. at pp. 1071-79, 1067, Ex., 5, Jackson Dep. Ex. 5, [DEF-JACKSON00070-78], [DEF-JACKSON00066].

Defendant spoke with Supervisor Rose again the morning of August 14, 2022 and was directed to discuss the situation with NCCU Unit Manager Shanna Watson. Id. at pp. 701, 737, Ex. 5, Jackson Dep. 62:15-18, 98: 14-21; Id. at p. 1130, Ex. 5, Jackson Dep. Ex. 7, Jackson's Answers to Plaintiff's First Set of Interrogatories. Unit Manager Watson then directed Ms. Jackson to speak with WVUH Human Resources. Id. at p. 743, Ex. 5, Jackson Dep. 104:12-14. On August 15, 2022, Defendant participated in a video conference call with WVUH Human Resources staff members Crystal Bennett and Lisa Hartman. Id. at

pp. 774-75, Ex. 5, Jackson Dep. 135:23-136:2; Id. at pp. 1154-56, Ex. 5, Jackson Dep. Exs. 8-9 (email and notes). The meeting was memorialized in notes and an email by WVUH Human Resources staff.

Of relevance here, the notes reflect that Defendant reported that she worried her assignments were being changed. She identified Charge Nurse Courtney Prior as the individual who brought forth the complaint to Supervisor Rose. The notes further reflect that Defendant did not know if Dr. Balise told charge nurses to change her assignments but had noticed he was not in general surgery patient rounds with her. Id. at pp. 1155-56, Ex. 5, Jackson Dep. Ex. 9 (notes). WVUH Human Resources additionally noted that Defendant shared a fear of retaliation and reported Dr. Balise's alcohol use. The report included that Dr. Balise had been hospitalized in April for pancreatitis, was prescribed Ativan to help with withdrawal, that she had reached out to Dr. Reiger and Dr. Ballou for help, and that Dr. Ballou removed all the alcohol from Dr. Balise's home. Id. Defendant encouraged WVUH Human Resources to speak with the nightshift charge nurses regarding the allegations. Id. Defendant reported instances and observations of Dr. Balise's off-duty drinking but did not have any examples of him being under the influence or impaired by alcohol at work. Id. at p. 1154, Ex. 5, Jackson Dep. Ex. 8(email).

Notes of follow-up investigation by WVUH Human Resources reflect that members of the HR staff spoke with Shanna Morgan, McKenna Coyne, Andrew Snyder, Courtney Prior, Megan Signorelli, and Hailey Swift. ECF No. 274-2, WVUH000024-26. The interview notes reflect that the questioned charge nurses had never been asked to change Ms. Jackson's assignments but confirmed that Dr. Balise had asked them about her and Ms. Strietbeck's patient assignments. Id. Dr. Balise learned of Ms. Jackson's report and was called to meet with program director Dr. Borgstrom and other administrators, Dr. Lauren Dudas and Dr. Wallis Marsh, on August 16, 2022. ECF No. 217-2 at pp. 13, 15, Ex. 2, Balise Dep. 13:21-24; 15:22-24.

## II. RELEVANT PROCEDURAL HISTORY

On August 15, 2023, Plaintiff Stephen J. Balise, M.D. filed a pro se Complaint against Defendant Brittany Jackson in the Circuit Court of Monongalia County, West Virginia. ECF No. 1. Service was effectuated upon Defendant on December 15, 2023, and Defendant removed this action to this Court on January 3, 2024. Id. The Complaint alleged (1) Defamation, Libel, and Slander; (2) Defamation Per Se, Libel, and Slander; (3) Defamation Punitive Damages; and (4) Tortious Interference with Business Relationships. ECF No. 1-1, Compl.

On January 8, 2024, Defendant Brittany Jackson moved to dismiss Plaintiff's Complaint. ECF No. 8. Following briefing,

the Court denied in part and granted in part Defendant's Motion to Dismiss. ECF No. 76. The Court granted Defendant's motion as it pertained to Plaintiff's claim for defamation punitive damages (Count 3). Following the 12(b)(6) stage, Plaintiff's remaining claims were: (1) Defamation, Libel, and Slander; (2) Defamation Per Se, Libel, and Slander; and (4) Tortious Interference with Business Relationships. Id.; see ECF No. 1-1, Compl.

Defendant originally moved for summary judgment on October 4, 2024. ECF No. 88.[2] Subsequently, following various discovery disputes, this Court ultimately entered an *Amended Scheduling Order* [ECF No. 108] which extended the discovery period and dispositive motions deadline. ECF No. 108. This Court ruled that Defendant could re-file or supplement her summary judgment motion at the conclusion of discovery and that Plaintiff was not required to respond to the dispositive motion until the conclusion of the discovery period or within 21 days of any supplemental briefing by Defendant. Id. This deadline was ultimately extended by agreed order. ECF No. 202.

On September 29, 2025, Plaintiff filed *Plaintiff's Motion to Amend Pleadings to Conform to the Evidence* [ECF No. 209], which Defendant opposed [ECF No. 224] and Plaintiff then replied

[2] Because Defendant filed *Defendant Brittany Jackson's Renewed Motion for Summary Judgment (Filed Under Seal)* [ECF No. 217], Defendant's original summary judgment motion [ECF No. 88] is **DENIED AS MOOT.**

in further support thereof [ECF No. 224].[3]

On September 30, 2025, Defendant filed *Defendant Brittany Jackson's Motion to Exclude Expert Testimony of Dr. J. Wesley Boyd (Filed Under Seal)* [ECF No. 216] and *Defendant Brittany Jackson's Renewed Motion for Summary Judgment (Filed Under Seal)* [ECF No. 217], along with supporting memorandum [ECF No. 218]. On the same day, Plaintiff filed *Plaintiff's Motion for Summary Judgment (Filed Under Seal)* [ECF No. 225] with supporting memorandum [ECF No. 226]. Both motions are fully briefed. See ECF Nos. 239, 256, 261, 265, 241 and 252.

On January 21, 2026, Counsel for West Virginia University Hospital filed a *Motion for Leave to File Amicus Curiae Brief to Correct Misrepresentations Regarding Subpoena Compliance* [ECF No. 268]. Plaintiff filed his opposition to the amicus curiae brief on January 27, 2026. ECF No. 269. Defendant took no position on whether the Court should consider WVUH's briefing. See ECF No. 272. For reasons stated on the record at the February 19, 2026 hearing, the Court **GRANTED** WVUH's Motion [ECF No. 268] and ruled it would consider the amicus brief when addressing the pending dispositive motions. ECF No. 272 at pp.

[3] Upon review of the parties' briefings and considering Federal Rules of Civil Procedure 15 and 16, the Court finds good cause does not exist to allow Plaintiff to amend his pleadings past the Scheduling Order deadline; thus, Plaintiff's Motion to Amend [ECF No. 209] is **DENIED**. Further, allowing Plaintiff to amend the pleadings the day before the dispositive motions' deadline and well after the conclusion of the extended discovery period is prejudicial and unwarranted.

5:21-6:2.

The Court heard oral argument on the subject cross motions for summary judgement on February 19, 2026. Six months later, Plaintiff moved to supplement the summary judgment record with alleged newly discovered evidence consisting of two pages of notes documented by Human Resources for WVUH summarizing witness interviews conducted regarding Plaintiff's conduct and interactions with Defendant at work. ECF No. 274.[4]

The cross motions for summary judgment are extensively briefed and ripe for this Court's review.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of

[4] Plaintiff seeks to introduce into the record documents produced by West Virginia University Hospital ("WVUH") in discovery in the state court action underlying Dr. Balise's termination from the residency program at WVUH. To the extent the August 15, 2022 WVUH human resources interview notes [ECF No. 274-2] were received before this Court completed its review of the record and Defendant had an opportunity to respond to the document's substance and relevance [ECF No. 276], the Motion is **GRANTED** and the Court will consider WVUH000024-26 [ECF No. 274-2] along with the parties' argument as part of the summary judgment record.

a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citations omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the Court must ask, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). At its core, the summary judgment process examines whether a trial is needed. See id. at 250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)

(citation and internal quotation marks omitted). The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment."). "The court must deny both motions if it finds there is a genuine dispute of material fact, '[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" John C. Grimberg Co. v. Nudura Corp., 775 F. Supp. 3d 946, 954 (D. Md.), reconsideration denied, 806 F. Supp. 3d 554 (D. Md. 2025) (quoting 10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2720 (4th ed. 2022)). Afterall, the district court has an "affirmative obligation...to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## IV. DISCUSSION

The Court considers each motion for summary judgment in turn. First, Defendant argues that she is entitled to judgment as a matter of law on the defamation claims because Plaintiff failed to show that Ms. Jackson's statements were nonprivileged, false, negligently made, or caused his claimed damages. ECF No.

218. Second, Defendant moves for summary judgment on the tortious interference claim because Dr. Balise failed to prove her statements were false or caused his termination from the WVUH residency program. Id.

In contrast, Plaintiff argues he is entitled to summary judgment on all claims because the record shows that Ms. Jackson made defamatory statements which were false and not privileged, and that Ms. Jackson's malicious conduct directly and proximately caused Dr. Balise damage. ECF No. 225.

The Court considers the following statements alleged in Plaintiff's Complaint.

1. Plaintiff is an alcoholic("Statement #1");
2. Plaintiff had a medical condition during residency caused by alcohol abuse ("Statement #2");
3. Plaintiff was treated for alcohol withdrawal with benzodiazepines ("Statement #3");
4. Plaintiff's co-residents, Dr. Ballou and Dr. Regier, had to remove alcohol from his apartment on more than one occasion ("Statement #4");
5. Plaintiff made patient care decisions based on Defendant's assignments (Statement #5"); and

6. Plaintiff encouraged Defendant to get tested for a sexually transmitted disease ("Statement #6").[5]

ECF No. 1-1, Compl. at ¶ 12.

**A. Defamation and Slander, Per Se Defamation and Slander**

Under West Virginia law, defamation requires the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Spears v. Cable News Network, CNN, 2019 WL 3752921, at *2 (N.D.W. Va. Aug. 8, 2019) (quoting Butts v. Royal Vendors, Inc., 504 S.E.2d 911, 916 (W. Va. 1998); Syl. Pt. 1, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70 (W. Va. 1983)). Slander is "[a] false . . . oral statement that damages another's reputation." Pritt v. Republican Nat. Comm., 557 S.E.2d 853, 861 n.12 (W. Va. 2001) (quoting Black's Law Dictionary (7th ed. 1999)). "A statement is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the: community or to deter

[5] As discussed infra, there is no dispute that Defendant did not make this statement to WVUH Human Resources. See ECF No. 239 at p. 6 ("Defamatory Statement #6 about Dr. Balise allegedly encouraging the Defendant to get tested for a sexually transmitted infection ("STI"). That Defamatory statement only appears published in the Farley Report ..."). The Court denied Plaintiff's Motion to Amend the Complaint to incorporate statements allegedly made in relation to a report by the Farley Center. Furthermore, both sides are critical of the Farley Center Report, and the Court ultimately need not consider it to dispose of the subject motions because the only statements at issue in this case are those which were made to WVUH Human Resources.

third persons from associating or dealing with him.'" Susko v. Cox Enterprises, Inc., 2008 WL 4279673, at *2 (N.D.W. Va. Sept. 16, 2008) (quoting Belcher v. Wal-Mart Stores, Inc., 568 S.E.2d 19, 27 (W. Va. 2002)).

"Under the general rule, a statement is defamatory per se if its defamatory meaning is readily apparent on its face, or if the statement falls into one of the traditional slander per se categories." Workman v. Kroger Ltd. P'ship I, 2007 WL 2984698, at *5 (S.D.W. Va. Oct. 11, 2007). "[D]efamation per se includes only imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business, trade, profession or office." Cruse v. Frabrizio, 2014 WL 3045412, at *3 (S.D.W. Va. July 2, 2014). Where the statements are defamation per se, damages are presumed. Milan v. Long, 88 S.E. 618, 620 (W. Va. 1916).

**1. Matters of Opinion**

"A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. Pt. 6, Long v. Egnor, 346 S.E.2d 778, 780 (W.Va. 1986). See Blankenship v. Trump, 558 F. Supp. 3d 316, 327 (S.D.W. Va. 2021). As such, the Court must initially determine whether a "statement is one of fact or opinion," because a "statement of opinion which does not contain a

provably false assertion of fact is entitled to full constitutional protection." Ballengee v. CBS Broad., Inc., 331 F. Supp. 3d 533, 545 (S.D.W. Va. 2018), aff'd, 968 F.3d 344 (4th Cir. 2020) (quoting Pritt, 557 S.E.2d 853); Syl. Pt. 4, Maynard v. Daily Gazette Co., 447 S.E.2d 293 (W. Va. 1994). See Hupp v. Sasser, 490 S.E.2d 880, 887 (W. Va. 1997)(finding defendant's opinion that plaintiff was a "bully" is not provably false and is totally subjective); Giles v. Kanawha Cnty. Bd. of Educ., 2018 WL 300605, at *4 (W. Va. Jan. 5, 2018)(finding respondent's "feelings and opinions regarding his own judgment about petitioner, do not include provably false assertions of fact, are protected under the First Amendment, and cannot form the basis of a defamation claim.").

Furthermore, "minor inaccuracies cannot support a cause of action; the law looks instead at 'the substance, the gist, the sting, of the libelous charge...A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Kostenko v. CBS Evening News, 265 F. Supp. 3d 672, 680 (S.D.W. Va. 2017) (quoting Syl. Pt. 4, State ex rel. Suriano v. Gaughan, 480 S.E.2d 548, 551 (W. Va. 1996)).

**2. Qualified Privilege**

The second element of a defamation claim requires showing the existence of a non-privileged communication.

> Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.

Syl. Pt. 3, Haught v. Fletcher, 874 S.E.2d 27, 29 (W. Va. 2022) (internal quotations and citations omitted). The qualified privilege is usually extended to communications regarding "employer-employee relations". Mauck v. Martinsburg, 280 S.E.2d 216, 221 (W. Va. 1981); Harbolt v. Steel of W. Virginia, Inc., 640 F. Supp. 2d 803, 819-20 (S.D.W. Va. 2009)(finding Defendant's statement that the Plaintiff had sold drugs to a co-worker, in the course of an investigation into the alleged conduct, was not "a nonprivileged communication to a third party," and that the statement dealt with the reason for the investigation of Plaintiff, which surely was of "sufficiently important interest" to both Plaintiff and Defendant).

"The existence or nonexistence of a qualifiedly privileged occasion, and whether the privilege has been exceeded, in the absence of a controversy as to facts, are questions of law for the court." Syl. Pt. 4, Haught, 874 S.E.2d at 29; Syl. Pt. 3,

Swearingen v. Parkersburg Sentinel Co., 26 S.E.2d 209 (W. Va. 1943). "The primary manner in which a qualified privilege to publish defamatory statements may be defeated is by a showing of actual malice." Crump, 320 S.E.2d at 78 (1983).

Malice requires a plaintiff to prove that a defendant had "a subjective appreciation at the time of publication that either (1) the defamatory statement is false, or (2) the defamatory statement is being published in reckless disregard of whether it is false." Tomblin v. WCHS-TV8, 434 F. App'x 205, 211 (4th Cir. 2011)(quoting Hinerman v. Daily Gazette Co., Inc., 423 S.E.2d 560, 573 (W.Va. 1992)).

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."

Chafin v. Gibson, 578 S.E.2d 361, 367 (W. Va. 2003) (quoting Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485 (1984)). "Whether a conditionally privileged occasion was abused is a question of law for the Court when there is an absence of controversy as to the facts bearing thereon."

McKinney v. K-Mart Corp., 649 F. Supp. 1217, 1221 (S.D.W. Va. 1986)(ruling on summary judgment the statements made by the defendant were protected by a qualified privilege and that plaintiff failed to raise a genuine issue of fact as to any exception to the privilege's application).

**a. Statement #1**

The Court first addresses whether Ms. Jackson's statement that Dr. Balise is an alcoholic is a constitutionally protected opinion. The first four statements relate to Plaintiff's alleged alcoholism. The Restatement (Second) of Tort has addressed this issue in a very similar hypothetical situation. "statements of belief are defamatory if they imply the existence of defamatory facts that are not disclosed to the listener. . .for example, the statement 'I think he must be an alcoholic' is actionable because a jury might find that it implied that the speaker knew undisclosed facts justifying his opinion." Restatement (Second) of Torts § 566 (1977). However, providing additional information behind such a statement can remove the implication of unknown defamatory facts, rendering the statement an opinion. Milkovich v. Lorain J. Co., 497 U.S. 1, 27 (1990) (discussing Restatement (Second) of Torts § 566).

Restatement (Second) of Torts § 566 provides the following hypotheticals:

> 3. A writes to B about his neighbor C: "I think he must be an alcoholic." A jury might find that this was not just an expression of opinion but that it implied that A knew undisclosed facts that would justify this opinion.
>
> 4. A writes to B about his neighbor C: "He moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic." The statement indicates the facts on which the expression of opinion was based and does not imply others. These facts are not defamatory and A is not liable for defamation.

"The degree to which such kinds of statements have real factual content can, of course, vary greatly. We believe, in consequence, that courts should analyze the totality of the circumstances in which the statements are made to decide whether they merit the absolute First Amendment protection enjoyed by opinion." Ollman v. Evans, 750 F.2d 970, 978-79 (D.C. Cir. 1984).

First, Defendant argues that she cannot be held liable for defamation because the statement regarding Balise's alcoholism, Statement #1, is an opinion. ECF No. 218 at p. 43. She argues that she provided the basis of her opinion to WVUH Human Resources through additional information, including (1) Dr. Ballou removed alcohol from Dr. Balise's apartment; (2) Ms. Jackson went to two residents for help, but nothing happened;

(3) Dr. Balise was prescribed Ativan for alcohol withdrawal; (4) Dr. Balise drank gin and tonics on his days off until he went to bed; (5) Dr. Balise looked like he drank alcohol; (6) Dr. Balise was hospitalized for pancreatitis; and (7) Ms. Jackson asked Dr. Balise to get help a few times. Id. at p. 44; ECF No. 217-2 at pp. 1154-56, Ex. 5, Jackon Dep. Exs. 8-9, Crystal Bennett Email to Dr. Edmond and Crystal Bennett, Lisa Hartman interview notes 8/15/22. By providing statements to support her opinion of Dr. Balise's alcoholism, Defendant contends there is no implication of unknown defamatory facts, and thus argues the statement is a constitutionally protected opinion. ECF No. 218 at pp. 44-45.

In contrast, Plaintiff moves for summary judgment on Statement #1 arguing that it is per se defamation and not a protected opinion. ECF No. ECF No. 226 at p. 5. Plaintiff further challenges the reliability of various medical reports which find Dr. Balise suffers from Alcohol Use Disorder. Id.

Importantly, Plaintiff overstates and misreads this Court's prior Order on Defendant's Motion to Dismiss [ECF No. 76]. First, the Court clearly stated that whether Statement #1 was an opinion could only be determined from a fully developed record. ECF No. 76 at p. 9. Second, whether a statement can be considered defamation per se does not automatically mean it is not a protected opinion. "Even if a statement constitutes defamation per se, this does not mean that the plaintiff

automatically succeeds on his or her defamation claim; rather, common law defenses are still available in such instances, including qualified privileges." Cruse v. Frabrizio, No. CIV.A. 3:13-18768, 2014 WL 3045412, at *3 (S.D.W. Va. July 2, 2014). See Mauck, 280 S.E.2d at 218-21 (W.Va. 1981)(discussing per se defamation compared to West Virginia's insulting words statute and explaining that "the common law defenses of privilege and truth along with any First Amendment defenses are available" for both sorts of claims).

At the motion to dismiss stage, this Court was obligated to accept all well-pled facts as true. Plaintiff alleged in the Complaint that the statements were defamatory, i.e., untrue, and affected his profession. Taking those facts as true, the Court merely found that Statements #1-#5 would qualify as defamation per se. ECF No. 76. This finding at the pleading stage in no way reduces Plaintiff's obligation to actually prove the statements are defamatory per se and defend against defenses of truth, opinion, or privilege.

Regarding Statement #1, the Court finds that Ms. Jackson's statement to WVUH Human Resources that Dr. Balise was an alcoholic qualifies as opinion. The record before the Court indisputably shows that when Ms. Jackson made this statement, she provided background information to explain her belief, including her personal observations of his consumption and that

she reached out to his co-workers for help. See ECF No. 217-2 at pp. 1155-56, Ex. 5, Jackson Dep. Ex. 9, Crystal Bennett, Lisa Hartman interview notes 8/15/22. See e.g. ECF No. 217-2 at pp. 256-57, Ex. 2, Balise Dep. Ex. 15, Ballou Letter[6]; Id. at p. 355 Text Message [Balise 0091]; Id. at pp. 159-60, Ex. 2, Balise Deposition 159:15-160:14 ("Q. During this encounter, Dr. Ballou took what she terms an assortment of alcohol from your apartment, correct? A. Correct."). The Supreme Court of the United States has ruled that providing such additional information removes the implication of unknown defamatory facts and ensures First Amendment protection. See Milkovich, 497 U.S. at 27. The totality of the circumstances demonstrated in the record before the Court very much align with the hypothetical presented in paragraph 4 of Restatement (Second) of Torts § 566 demonstrating when calling one an alcoholic qualifies as an opinion. Thus, Dr. Balise cannot rely upon Jackson's Statement #1 to support his claims for defamation/slander or defamation per se/slander per se.

Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED** to the extent they rely upon Statement #1 because there is no genuine dispute

[6] Marguerite Ballou's letter reads: "As I recall the events — she had reached out to me, worried about him. I had driven to his house that night to talk with him and check on him as I was very concerned about him. . . .He gave me an assortment of alcohol to take from his house which was all Ms. Jackson's."

that Statement #1 is a constitutionally protected opinion. Because Statement #1 is an opinion, the Court need not reach the parties' arguments as its substantive truth.[7] However, for the reasons discussed supra, the Court finds that Statement #1, as with Statements 2-6, is entitled to qualified privilege.

**b. Statements 2-6**

The second element of a defamation claim requires showing the existence of a non-privileged communication. Thus, before reaching the question of falsity, the Court must determine whether either party has shown that no genuine dispute of fact exists as to whether Statements #2-6 were or were not privileged.

First, Ms. Jackson argues that Dr. Balise has failed to prove that she made a non-privileged statement. ECF No. 218 at p. 56. Defendant contends that she provided true information to two of her supervisors, and at their direction, reported to WVUH Human Resources that Plaintiff was attempting to change her nursing assignments. Id. at p. 58. Defendant contends that her statements to WVUH were provided to protect her career and to protect patients receiving care at WVUH. Id. Furthermore, Ms. Jackson asserts that the undisputed record shows that she did

[7] "Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings." United States ex rel. Day v. Boeing, 777 F. Supp. 3d 553, 587 (E.D. Va. 2025)(citing Karsten v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir.1994)).

not tell WVUH Human Resources that her schedule was being changed or that Plaintiff was stepping down patients to avoid her. Id. Rather, she shared the information Supervisor Rose had been told by a charge nurse, so WVUH Human Resources could investigate the claims. Id. Defendant additionally states that she shared her full history with Dr. Balise, including their prior romantic relationship and her observations of his drinking habits, because she felt her career was being attacked and needed to provide WVUH Human Resources with why she thought it was happening. Id.

In contrast, Dr. Balise argues he is entitled to summary judgment on the defamation and defamation per se claims because the undisputed record shows Ms. Jackson made the statements with actual malice. ECF No. 226 at p. 14. Specifically, Plaintiff argues that Defendant's text messages and admissions show her intention to do harm and her "glee" in seeing Dr. Balise harmed personally and professionally. Id. at p. 20. Plaintiff argues that Defendant failed to act like a reasonably prudent person when she chose to report allegations of Dr. Balise's off-duty drinking, after receiving "unsupported hospital gossip," without investigating the claims first. Id. at p. 19. Plaintiff further contends that Plaintiff exceeded any privilege because her report to WVUH Human Resources went beyond allegations of changed work assignments and patient care decisions but also

included claims of alcoholism and testing for sexually transmitted infections. Id. at pp. 19-20.

Plaintiff's contention that he has proven actual malice as a matter of law is based upon Ms. Jackson's deposition testimony and certain text messages in the record. Id. at pp. 22-23; See e.g., ECF No. 217-2 at p. 1056, Ex. 5, Jackson Dep. Ex. 5, [DefJackson-00055] ("Now the whole world knows he's a piece of shit alcoholic and good luck paying back the 500k student debt"). In short, Plaintiff argues that the undisputed record shows Defendant spread malicious and unverified hospital gossip to WVUH Human Resources, without any proof of the gossip's truthfulness. ECF No. 252 at p. 8.[8]

Upon consideration of the record and the individual arguments for summary judgment, the Court finds that Plaintiff is not entitled to judgment as a matter of law because he fails to point to undisputed evidence to satisfy each element of his claims. Specifically, Plaintiff fails to prove that Statements #1-6 were non-privileged communications. In fact, Defendant sets forth evidence in response to Plaintiff's Motion which shows the information provided in Statements #1-6, viewed in the totality of the circumstances were privileged employer-employee

[8] The only alleged defamatory statements before the Court are those that have been identified as Statements #1-6 to WVUH Human Resources. Any statements allegedly made to the Farley Center or to Defendant's friends in private text messages are not the subject actionable claims as they were not alleged in the operative Complaint.

communications and presents evidence that they were made to protect her interests and those of third parties. ECF No. 241 at pp. 21-22.

Furthermore, Plaintiff fails to prove actual malice as a matter of law to defeat the claimed qualified privilege and satisfy the second element of the defamation claims. As Defendant points out, "actual malice" in this context requires "a subjective appreciation at the time of publication that either (1) the defamatory statement is false, or (2) the defamatory statement is being published in reckless disregard of whether it is false." Tomblin, 434 F. App'x at 211; ECF No. 241 at p. 22. Actual malice is not measured simply by whether Ms. Jackson disliked Dr. Balise. Assessing Plaintiff's Motion along with the relevant briefing, Defendant sets forth evidence in her opposition response briefing to dispute Plaintiff's view of the facts – including arguments that Statements #1-6 are true and that as a nurse she should make reports to her employer regarding allegations involving patient-care decisions and her employment.

Furthermore, Plaintiff argues without legitimate factual or legal support that Ms. Jackson had an obligation to personally investigate or contact her direct supervisor regarding the information Supervisor Rose shared with her – before speaking to WVUH Human Resources. This argument is unavailing because

Defendant did reach out to Manager White and nonetheless would be insufficient to warrant a finding of actual malice as a matter of law. Because Plaintiff has failed to satisfy the "non-privileged communication" element as a matter of law, the Court need not reach the remaining defamation elements.

Moving to Defendant's Motion for Summary Judgment, she argues that Plaintiff failed to prove that she made any nonprivileged, defamatory statement, that was false, made negligently, and caused injury. ECF No. 218 at p. 42. Defendant correctly states that Plaintiff's claim is defeated if any of these conditions are not met, and thus Defendant is entitled to judgment as a matter of law. Id. Though Defendant argues that Plaintiff cannot satisfy any element of the defamation claims, the Court first addresses whether any dispute of material fact exists as to whether Statements #2-6 are nonprivileged communications.

Ms. Jackson argues that Dr. Balise cannot prove she made a nonprivileged statement when she made reports to her superiors and WVUH Human Resources. ECF No. 218 at pp. 55-56. Defendant argues that the undisputed record shows that the subject statements were shared to WVUH Administration for the protection of her career and for patients receiving care at the hospital. Id. at p. 58. Regarding Statement #5, Defendant asserts that she did not report that her schedule was being changed or that Dr.

Balise was stepping down patients to avoid her. Rather, Ms. Balise informed WVUH Human Resources of the claims which had been reported to her by her Supervisor Rose and further provided WVUH Human Resources with the name of the charge nurse, Courtney Prior, who initially brought the concern forward, so WVUH Human Resources could investigate the report. Id.

Defendant argues that each of the statements fall within the qualified privilege of employer-employee communication because she "felt[her] career was being questioned and attacked, so [she] came forth with information that [she] had on why [she] thought that was happening." Id.; ECF No. 217-2 at p. 741, Ex. 5, Jackson Dep.102:17-24. She further contends that providing information on their past romantic history and her observations of Dr. Balise's drinking habits were necessary context. ECF No. 218 at p. 58.

Defendant sets forth that, based upon the undisputed record, Plaintiff cannot overcome the qualified privilege and show Ms. Jackson acted with actual malice because the statements to WVUH Human Resources were not made with knowledge of their falsity or a reckless disregard for whether they were false. Id. at p. 59.

Though discussed supra in the context of Plaintiff's Motion for Summary Judgment, the Court separately addresses Plaintiff's arguments regarding actual malice, specifically as opposition to

Defendant's Motion for Summary Judgment and whether a dispute of fact defeats Ms. Jackson's motion. In his response, Dr. Balise characterizes Defendant's report to WVUH Human Resources as "double hearsay", which she never attempted to verify. ECF No. 239 at p. 5. He further contends Ms. Jackson's report constituted actual malice because she consciously decided to "go nuclear" and go beyond what the situation called for by making allegations regarding Dr. Balise's off-duty drinking habits. Id. Plaintiff additionally contends that Statement #5 is demonstrably false because Defendant testified that she had no evidence that Dr. Balise ever attempted to change her work assignments. Id. Plaintiff further argues that the 2022 WVUH human resources interview notes [ECF No. 274-2, WVUH000024-26] support that Defendant acted with actual malice and that the statements were defamatory. ECF No. 239 at p. 6.

Though Plaintiff often combines his arguments, Dr. Balise appears to additionally argue that Defendant's view of the statements removes necessary context — context which supports the finding of actual malice. Id. at p. 7. Plaintiff argues that context, such as that he had permission from his program director to avoid Ms. Jackson, supports that Defendant's report was "clearly negative and defamatory." Id. at p. 7. Plaintiff further points to declarations of Plaintiff's co-workers, attacks the reliability of certain witnesses, and argues over

nuances between what he believes the record shows to be the truth and the statements at-issue in this case. For example, Plaintiff contends Defendant's report that Dr. Ballou removed alcohol from his home is defamatory and non-privileged because, while she did remove alcohol from his residence, he contends it all belonged to Defendant. Id. at p. 10; See e.g., ECF No. 217-2 at pp. 1163-64, Ex. 5, Jackson Dep. Ex. 12, Ballou Letter [Balise 0090-91]; ECF No. 217-2 at pp. 159-60, Ex. 2, Balise Dep. 159:15-160:14 ("Q. During this encounter, Dr. Ballou took what she terms an assortment of alcohol from your apartment, correct? A. Correct.").

Though Plaintiff sets forth several conclusory explanations, contentions, or what he believes to be evidence of defamation, Plaintiff does not set forth legitimate evidence of actual malice to defeat this Court finding Defendant's report to WVUH Human Resources was entitled to the qualified privilege as a matter of law. By Plaintiff failing to create, at minimum, a dispute of material fact as to the second element of the defamation claims — a nonprivileged communication — Defendant is entitled to summary judgment.

Here, the Court has no issue finding as a matter of law that Ms. Jackson's report to her superior NCCU Unit Manager Shanna Watson and subsequent report to WVUH Human Resources were privileged communications.

The Court relies upon Human Resources Manager Crystal Bennett's notes from her meeting with Ms. Jackson on August 15, 2022, in which the alleged actionable statements were made [ECF No. 217-2 at p. 1155-56, Ex. 5, Jackson Dep. Ex. 9]; Ms. Bennett's August 16, 2022 email to Michael Edmond, Sunita Kellermeyer, Colleen Sybert, and Anna Rush summarizing Defendant's report and plans to investigate the claims [ECF No. 217-2 at p. 1154, Ex. 5, Jackson Dep. Ex. 8 Balise.ESI1000001]; and WVUH Human Resources' contemporaneous notes taken during Ms. Jackson's report and subsequent investigation in to the allegations in August 2022 [ECF No. 274-2 at pp. 10-12, WVUH000024-26] — as the only written documentation of Ms. Jackson's oral report to WVUH.

Ms. Jackson's report was indisputably privileged because it was made for the protection of her own employment interests and WVUH has a legitimate interest in investigating reports of improper patient-care decisions and employee misconduct. The statements alleged in Plaintiff's operative complaint clearly fall within the privilege afforded to "employer-employee relations." Like in Harbolt, where a defendant's statement alleging an employee sold drugs at work was protected because it was made in the course of an investigation into the alleged statement, here, both Ms. Jackson and WVUH both shared a sufficiently important interest in investigating the allegations

reported to Ms. Jackson. Similarly, Ms. Jackson's statements regarding their relationship context could have served as a motive for Dr. Balise to engage in the alleged efforts to change her work assignments. This speaks nothing to the truth of the underlying allegations but rather shows the importance of the reported statements being privileged, to allow for investigation into their truth by WVUH.

Accordingly, Ms. Jackson's report to her superiors and WVUH Human Resources was privileged as a matter of law, and to overcome this privilege on summary judgment, Dr. Balise must present evidence that Ms. Jackson made the report with actual malice — he cannot. Plaintiff has failed to proffer legitimate evidence that Defendant had a subjective appreciation at the time she made the report to her superiors and WVUH Human Resources that the statements were false, or that she made the report with a reckless disregard of whether it was false.

Regarding Statement #5, the notes from WVUH Human Resources show that Ms. Jackson informed Human Resources of information that was brought to her attention from Supervisor Rose. The concurrent notes do not support that Ms. Jackson was intentionally providing false information or that she did not care if it was false. Rather, she provided Human Resources with what she had been told and gave WVUH Human Resources the names of people she believed should be interviewed and provided

relevant relationship context to aid in any investigation.

Defendant’s text messages around the time of the report further do not show actual malice. In a text message to her late boyfriend Ryan Simmons, Defendant stated:

> Leanna just told me that on top of the acuity stuff, Stephen has been going and asking charges to completely change my assignment when I have Gen Surg patients and when they refuse, he takes the patients out of ICU status without even seeing the patient just so I’m not the one taking care of them.

ECF No. 217-2 at p. 1065, Ex. 5, Jackson Dep. Ex. 5 Defjackson-00064. She then goes on to send, “I’m furious . . . That’s not ok for patients and it damn sure isn’t ok to do that to me.” Id. Defendant’s text messages in August 2022 evidence her state of mind as legitimate concern for her career and patients and anger over what she was told by Supervisor Rose. Plaintiff offers only conclusory argument that Ms. Jackson’s dislike for Dr. Balise within her text messages amounts to actual malice. This is not correct.

Further, the text messages from after she made her report do not offer any admission as to falsity. Rather, they show her frustration with being sued and that WVU allowed him to return to work, along with concerns for retaliation. See e.g., ECF No. 217-2 at pp. 1025-29, Ex. 5, Jackson Dep. Ex. 5 [Defjackson-00024-28]. In fact, Defendant’s text messages, undisputed,

support that she did not knowingly or recklessly make a false report. Id. at p. 1021, [Defjackson-00020] ("I would rather get sued and risk losing everything I have than sign a paper that says I lied about his actions because I 1000% did not."); Id. at p. 1025, [Defjackson-00024]; Id. at p. 1040, [Defjackson-00039] ("I didn't do anything except give HR facts…"); Id. at p. 1056, [Defjackson-00055] ("It would have gone unnoticed had he not been [] with my assignments. Thank God Courtney told Leanna.").[9]

Because Plaintiff fails to create a dispute of fact as to the qualified privilege or actual malice, Defendant is entitled to summary judgment as to the claims of defamation, defamation per se, slander, and slander per se. Because Dr. Balise cannot show the existence of non-privileged communication, the Court need not address Defendant's additional arguments in favor of summary judgment.

**c. Statement #6**

Though the Court finds that the entirety of Ms. Jackson's report to WVUH Human Resources was privileged, the Court also finds that Plaintiff has failed to provide any evidence that Defendant Jackson reported to WVUH Human Resources that he

[9] Again, the Court does not reach the question of falsity of a matter of law because Plaintiff cannot prove non-privileged communication. The text messages are not relied upon to support the defense of truth, but rather to evince Defendant's state of mind in assessing whether Plaintiff showed "actual malice" to overcome the qualified privilege. The text messages to Defendant's friends show she believed her report to WVUH Human Resources and Plaintiff does not offer evidence to create a dispute of material fact.

encouraged her to get STI testing. Defendant testified that she did not make such a statement [See ECF No. 217-2 at p. 1113, Ex. 5, Jackson Dep. Ex. 6 Response to Request for Admission No. 7; Id. at pp. 796-97, Ex. 5, Jackson Dep. 157:2-158:1] and no such allegation is recorded in any of the documents memorializing Jackson's report or WVUH Human Resources' investigation [Id. at pp. 1154-56, Ex. 5, Jackson Dep. Exs. 8-9]. Rather, Plaintiff admits in his response to Defendant's motion for summary judgment that the alleged statement regarding STI testing "only appears published in the Farley Report." ECF No. 239 at p. 6. The Court has already ruled that the only statements at-issue are those alleged to have been made to WVUH Human Resources in the operative complaint. Accordingly, the undisputed record shows that Plaintiff cannot prove Defendant ever made Statement #6 to WVUH Human Resources and thus Defendant is additionally entitled to summary judgment on this ground.

For the reasons stated above, the Court **DENIES** Plaintiff's Motion [ECF No. 225] and **GRANTS** Defendant's Motion [ECF No. 217] as they pertain to Counts One and Two of Plaintiff's Complaint.

**B. Count 4: Tortious Interference with Business Relationships**

Both parties argue they are entitled to judgment as a matter of law on Count Four of Plaintiff's Complaint. The Supreme Court of Appeals of West Virginia has held that "[t]o establish prima facie proof of tortious interference, a

plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166 (W. Va. 1983).

"If a plaintiff makes a prima facie case [of tortious interference], a defendant may prove justification or privilege, affirmative defenses." Tiernan v. Charleston Area Med. Ctr., Inc., 506 S.E.2d 578, 607 (W. Va. 1998). "Privilege is a defense to claims of both defamation and tortious interference." Dickens v. Werner Enters., Inc., No. 1:12CV76, 2012 WL 4813545, at *3 (N.D.W. Va. Oct. 10, 2012); Dickens v. Werner Enters., Inc., No. 1:12CV76, 2014 WL 838224, at *3 (N.D.W. Va. Mar. 4, 2014), aff'd, 582 F. App'x 208 (4th Cir. 2014)(Keeley, J.)("Because Werner's statements were privileged, Dickens' claims of libel and tortious interference fail as a matter of law."). "Authority [and] common sense ... dictate that if [a] letter is privileged against suit for defamation, it must also be protected in an action for interference with business." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 322 (4th Cir. 2012) (citing McLaughlin v. Copeland, 455 F.Supp. 749, 752 (D.Del.1978)).

As this Court has already found, Plaintiff has failed to show as a matter of law that Ms. Jackson's report to WVUH Human

Resources was nonprivileged communication to entitle him to summary judgment in his favor on the defamation claims. Similarly, this Court has also already found that Defendant proved that Ms. Jackson's report is entitled to the qualified privilege of employer-employee communication and that the Plaintiff failed to produce a dispute of material fact to support actual malice. Because this Court has already ruled that Statements #1-6 are privileged against suit for defamation, the statements must also be protected against Plaintiff's claim for tortious interference with a business relationship. Thus, the defense of privilege extends to each of Plaintiff's claims.

Accordingly, the Court **DENIES** Plaintiff's Motion [ECF No. 225] and **GRANTS** Defendant's Motion [ECF No. 217] as they pertain to Count Four of Plaintiff's Complaint.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **DENIED** [ECF No. 225], and Defendants' Motion for Summary Judgment is **GRANTED** [ECF No. 217]. Any remaining deadlines or pending motions are **TERMINATED.** It is further **ORDERED** that this action be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:** September 30, 2026

Tom S Kleeh

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA